Garsh, J.
The plaintiff Chemi Whitlow (“Whitlow”) has brought this action alleging that the defendant Harvard Pilgrim Health Care, Inc. discriminated and retaliated against her on the basis of her race and color in violation of c. 15 IB and Title VII. The defendant now seeks summary judgment on the grounds that Whit-low has failed to produce any evidence that she was discriminated and/or retaliated against because of her race. A review of the entire summary judgment record demonstrates that there are genuine issues of material fact and, therefore, the moving party is not entitled to judgment as a matter of law.
The defendant also seeks a partial summary judgment on the basis that even if Whitlow could produce evidence to support her claims of discrimination and retaliation, it is subject to limited immunity pursuant to G.L.c. 231, §85K. That statute provides, in pertinent part:
It shall not constitute a defense to any cause of action based on tort brought against a corporation . . . that said corporation ... is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation... liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interest and costs. Notwithstanding any other provision of this section, the liability of charitable corporations shall not be subject to the limitations set forth in this section if the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes.
G.L.c. 231, §85K (emphasis added).
*331 The Legislature enacted the cap after the Supreme Judicial Court announced its intention, in Colby v. Carney Hospital 356 Mass. 527, 528, (1969), to abolish the doctrine of charitable immunity. Governor Francis W. Sargent, in proposing the legislation, stated that it was necessary “to balance the desirability of protection for [charitable] corporations ... against the interest of the person who is injured as a result of a tort for which the nonprofit corporation is responsible.” Conners v. Northeast Hospital Corp., 439 Mass. 469, 473 (2003) (emphasis added), quoting 1971 House Doc. No. 5976.
By its express terms, the $20,000 cap applies only to a claim seeking damages for commission of a tort. See Birbiglia v. St. Vincent Hospital, Inc., 427 Mass. 80, 88 (1998) (“Like c. 93A, [c. 272,] §99Q does not involve a tort action, and it is recovery in tort that G.L.c. 231, §85K, caps”); Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 27 (1997) (“The $20,000 limitation on damages against charitable entities for tort liability, contained in G.L.c. 231, §85K, does not apply to liability under G.L.c. 93A, which creates an independent statutory basis of liability”).
The defendant argues in its Memorandum in Support of its Motion for Summary Judgment that “(t]wo recent decisions by the Supreme Judicial Court in the matters of Keene v. Brigham and Women’s Hospital, Inc., 439 Mass. 223 (2003), and Conners v. Northeast Hospital Corp., 439 Mass. 469 (2003), confirm the applicability of the charitable cap to claims under M.G.L.c. 151B.”[2] The causes of action in both these cases were indisputably tort claims. Keene analyzes the applicability of c. 231, §85K to damages assessed against the defendant on a default judgment in a medical malpractice case. 439 Mass, at 224. The Court characterized Section 85K as “a legislatively mandated limit on the amount of civil damages that can be recovered from a charitable corporation that causes harm by committing a tort in the performance of its charitable purpose, no matter how compelling the circumstances of the injured party.” Id. at 239 (emphasis added). Conners discusses c. 231, §85K in the context of an action awarding damages on a claim of negligence arising from a slip and fall on ice and snow. 439 Mass, at 470. Neither Keene nor Conners mention c. 151B much less, as the defendant asserts, “confirm the applicability of the charitable cap to claims under M.G.L.c. 151B.” Indeed, the cases do not even discuss the meaning of the word “tort” as used in Section 85K.[3]
Undoubtedly, employment discrimination claims have historical connections to common-law tort and contract claims. Dalis v. Buyer Advertising, Inc., 418 Mass. 220, 226 (1994). Nevertheless, a claim brought under chapter 151B is not a tort claim. See Thomas v. EDI Specialists, Inc., 437 Mass. 536, 539 (2002) (commenting that “in some but not all respects, actions brought under G.L.c. 151B are analogous to tort actions”); Kuppens v. Davies, 38 Mass.App.Ct. 498, 500 (1995) (contrasting damages in tort cases where compensation for future lost wages is treated conceptually as an already incurred loss of earning capacity with damages in discrimination cases under G.L.c. 151B, in which expected future income reductions is treated conceptually as losses not yet incurred); McMillan v. Massachusetts Society for the Prevention of Cruelty to Animals, 140 F.3d 288, 307 (1st Cir. 1998) (“the causes of action to which [c. 151B] gives rise ... cannot properly be called causes of action in tort” and thus damages awarded pursuant to c. 151B are not subject to the constraints of c. 231, §85K), cert, den., 525 U.S. 1104 (1999); Walsh v. Carney Hospital Corp., 8 Mass. L. Rptr. 574 1998 WL 1470698 (Mass.Super. 1998) (Cowin, J.) (“The $20,000 charitable immunity tort damages cap does not apply to c. 151B awards because a violation of c. 151B is not a tort”).[4]
The Supreme Judicial Court has rejected the contention that a wage discrimination claim under c. 149, §105A, the Massachusetts Equal Pay Act claim, is governed by the Tort Claims Act even though such a claim, like an action brought under c. 151B, has historical connections to common-law tort and contract claims. Jancey v. School Committee of Everett, 421 Mass. 482, 501 (1995). “(A]cts of discrimination— whether intentional or unintentional — do not thereby become torts.” Id. The Court has also noted that the similarity in wording between c. 231, §85K and the statutory cap on governmental liability set forth in G.L.c. 258, §2, the Massachusetts Tort Claims Act. Keene, 439 Mass, at 240 n.26.
Without bringing any of these relevant cases to the court’s attention, the defendant, on the basis of the Order on Post-Trial Motions of All Parties that entered in Ayash v. Dana-Farber Cancer Institute, Civil Action No. 96-0565E (Suffolk Super.Ct. Aug. 28, 2003) (White, J.), urges this court to construe Section 85K as capping damages for “tort-like” claims in addition to torts. In Ayash, the court found that c. 231, §85K applies to the “tort-like” statutory claim of retaliation under c. 151B. Id.
I conclude that the plain text of 231, §85K does not permit such a construction. When the language of a statute is clear and unambiguous, the words used must be accorded their plain and ordinary meaning. Commonwealth v. Ray, 435 Mass. 249, 252 (2001). See also Henry v. Board of Appeals of Dunstable, 418 Mass. 841, 843 (1994) (words used should be interpreted according to their common usages). Common usage can be derived from sources such as a term’s use in other legal contexts. Framingham Clinic, Inc. v. Zoning Board of Appeals of Framingham, 382 Mass. 283, 290 (1981). The language of the statute itself is the principal source of insight into the legislative purpose.
If the word “tort” as used in c. 231, §85K is assigned its ordinary meaning, the result is both workable and logical.[5] The cap was enacted in 1971 as part of the Legislature’s abrogation — not expansion — of the com *332 mon-law doctrine of charitable immunity. Keene, 439 Mass, at 228 n. 11. Under the common law, a nonprofit corporation, “such as the defendant, enjoyed charitable immunity from tort liability, because funds donated for charitable purposes ought not to be diverted from those purposes to pay damages in tort actions.” Keene, 439 Mass, at 238 n.25. The Legislature clearly contemplated that the cap would be applied in those situations in which there otherwise would be an affirmative defense of charitable immunity. Section 85K starts by providing that it is not a defense to a tort action that the defendant is a charity, and only then goes on to state, “provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation,” liability shall not exceed $20,000. G.L.c. 231, §85K.
Prior to the enactment of Section 85K, c. 151B allowed the Massachusetts Commission Against Discrimination to make damage awards. G.L.c. 151B, §5, as amended by St. 1965, c. 569. At first, the statutory definition of “employer” expressly excluded all charitable organizations. St 1946, c. 368, §4. However, c. 15 IB was amended in 1969 to include charitable corporations, with certain limited exceptions not relevant here.[6] St. 1969, c. 216. By so doing, the Legislature withdrew the statutory protection it previously had provided to charities for claims arising under c. 151B, demonstrating an intent that there be no charitable immunity for matters governed by c. 151B.[7] It is not logical to assume that the Legislature intended, through the passage of c. 231, §85K, to create charitable immunity for c. 151B by limiting the liability of charitable corporations for claims brought under c. 151B. “The declared importance of providing certain remedies for all wrongs and manifest importance of fully implementing legislative remedies designed to combat unfair discrimination suggest that the court should ascribe to the Legislature an intent to truncate its declared remedies for discrimination only when it has done so clearly and unequivocally. It has not done so in c. 231, §85K.” Memorandum and Order on Motion for an Order Regarding G.L.c. 231, §85K, Forti. v. Massachuetts Institute of Technology, Civil Action No. 92-3948 (Middlesex Super.Ct. June 5, 1996) (McHugh, J.).
The defendant’s worry that a charitable entity’s ability to fulfill its charitable puipose will be chipped away by damage judgments under chapter 15 IB is a concern that it should address to the Legislature.[8] How to balance the desirability of preserving charitable assets against the importance of providing a meaningful remedy to a person unfairly discriminated against by an employer is a quintessential legislative judgment.
ORDER
For the reasons set forth above, the defendant’s motion for summaiy judgment is DENIED. It is hereby ORDERED that c. 231, §85K does not apply to any claims asserted under G.L.c. 15IB in this action.

In Weber v. Community Teamwork, Inc., 434 Mass. 761, 786 (2001), the Supreme Judicial Court declined to address the claim that recovery under G.L.c. 151B was subject to a cap of $20,000 pursuant to G.L.c. 231, §85K because the plaintiff had not yet succeeded on any of her claims.

The issue in Keene was whether a judge has authority to strike the statutory $20,000 cap on damages as a sanction for spoliation in a tort case. 439 Mass, at 238-42. In Conners, the plaintiff argued that the defendant no longer “functioned” as a charity “in any meaningful sense of the word,” that removal of snow from a parking lot did not “accomplish directly” its charitable purposes, and that the defendant should not benefit from the statutory cap because the tort had been committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes." 439 Mass, at 473, 477-78.

See also Albee v. New England Medical Center Hospitals, Inc., 7 Mass. L. Rptr. 593 1997 WL 691524 (Mass. Super. 1997) (Fabricant, J.) (G.L.c. 231, §85K does not protect a defendant from damages authorized by the legislature under c. 151B). But see Boyle v. Boston Foundation, Inc., 788 F.Sup. 627, 629 (D.Mass. 1992) (holding that the statutory cap applied to c. 15 IB claims by way of adopting the Magistrate’s recommendation which said no more than that the defendant, a public charity, claimed that recovery against it on the state discrimination claim was limited to $20,000 pursuant to G.L.c. 231, §85K and that its argument was “meritorious and not seriously opposed by [the plaintiff) at least on the current state of the law”).

When, as here, the words of the statute are clear and, “when assigned their ordinary meaning, yield a workable and logical result, we interpret the statute without resort to extrinsic aids, such as legislative history.” Foss v. Commonwealth, 437 Mass. 584, 586 (2002). In any event, the defendant has proffered no legislative history that would suggest that the Legislature intended the word “tort” in G.L.c. 231, §85K to encompass a c. 151B “tort-like” claim.

The statute, as amended in 1969, provided that “[t]he term ‘employer’ does not include a club exclusively social, or a fraternal association or corporation, if such club, association or corporation is not organized for private profit, nor does it include any employer with fewer than six persons in his employ, but shall include the commonwealth and all political subdivisions, boards, departments and commissions thereof. Nothing herein shall be construed to bar any religious or denominational institution or organization, or any organization operated for charitable or educational purposes, which is operated, supervised or controlled by or in connection with a religious organization; and which limits membership, enrollment, admission, or participation to members of that religion, from giving preference in hiring or employment to members of the same religion.” The definition in effect today is substantially similar. G.L.c. 151B, §1 ¶5.

That intent has never changed. Even after c. 151B was amended to allow persons to bring damage suits directly in Superior Court after filing a complaint with the Massachusetts Commission Against Discrimination, St. 1974, c. 478, the Legislature did not amend the definition of “employer” to exclude charitable corporations.

The need for such protection is open to dispute. See Keene, 439 Mass, at 242-43 (Ireland, J. dissenting) (‘The notion of a charitable immunity cap is unfair, obsolete, and fails to properly balance the interest of the innocent victim and that of the negligent charitable organization”). The “vast majority” of states have no charitable immunity cap for torts. Id, at 247.